IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RONALD C. WILKERSON, JR., )
)
Plaintiff, )
v. )
) Case No. 4:25-cv-1786
ST. PATRICK CENTER, a Missouri, )
non-profit corporation, ) JURY TRIAL DEMANDED
)
Defendant. )
)

# ***COMPLAINT***

COMES NOW Plaintiff Ronald C. Wilkerson, Jr. ("Plaintiff") and for is Complaint against Defendant St. Patrick Center ("Defendant") states as follows:

**Parties and Jurisdiction**

1. At all times relevant herein, Plaintiff is and was a citizen of the United States, state of Missouri, and City of St. Louis.

2. At all times relevant herein, Defendant is and was a Missouri non-profit corporation in good standing with its principal place of business in the City of St. Louis, Missouri at 800 N. Tucker Blvd., St. Louis, MO 63101.

3. At all times relevant herein, Defendant operated a women's night program at 800 N. Tucker Blvd., St. Louis, MO 63101 in the city of St. Louis, Missouri.

4. At all times relevant herein, Plaintiff is and was employed by Defendant working as a night assistant in the women's night program.

5. Jurisdiction in this Court is proper pursuant to 42 U.S.C. §2000e-5(f)(3).

6. Venue in this Court is proper in that the acts and occurrences giving rise to Plaintiff's cause of action occurred in the City of St. Louis, Missouri within the Eastern Division of this Court.

7. At all times relevant herein, Defendant was acting through its designated supervisory agents, officers, employees and representatives who were acting within the course and scope of their employment and authority with full knowledge that Plaintiff's statutory rights were being violated by its employees and agents.

8. On or about March 5, 2024, Plaintiff dual filed a Charge of Discrimination with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission. A copy of Plaintiff's Charge of Discrimination is attached as Exhibit 1.

9. On September 10, 2025, the US Department of Justice, Civil Rights Division, issued Plaintiff a Right to Sue Letter which is attached hereto as Exhibit 2.

***Facts Common to All Counts***

10. Plaintiff is an African American man.

11. Defendant operates a women's night program, which is a short-term housing program for women who are homeless and struggling with substance abuse and/or mental illness.

12. In February of 2023, Plaintiff began working as a Night Assistant in Defendant's women's night program.

13. As a Night Assistant, Plaintiff's job duties included overseeing a shelter of approximately 30 to 40 residents, including checking in the residents, making sure they had food, clothing, and hygiene supplies, overseeing their medicine, and making sure they followed the shelter rules, and making sure they followed their treatment plans.
14. Out of eight staff that worked in the women's night program, Plaintiff was the only male staff member.
15. Although most of the staff in the women's night program were African American, there were no African American employees in positions of authority.
16. Plaintiff's normal schedule while working for Defendant included overnights except for Mondays, Wednesdays, and Fridays.
17. However, Plaintiff was frequently called at the last minute to fill in on his days off.
18. Plaintiff covered extra shifts for Defendant on a nearly weekly basis.
19. Because of the nature of the last minute requests to cover extra shifts, pursuant to which Plaintiff was frequently working double shifts, Plaintiff was told that he could take sleep breaks during his work hours during down time.
20. To the best of Plaintiff's knowledge, sleep breaks were common practice among the assistants.
21. The African American Case Workers for Defendant were required to work set schedules that included weekends, whereas the Caucasian Case Worker was allowed to set her own schedule and was not required to work weekends. This was

emblematic of the different way that African American and Caucasian employees were treated.

22. Plaintiff's supervisor and the CEO for Defendant were Caucasian women.

23. Beginning in October of 2023, there was a resident in the women's night program that was breaking shelter rules and harassing Plaintiff and several other staff members.

24. Plaintiff followed Defendant's protocol and brought the issues with the resident to his supervisor's attention.

25. The resident, who was Caucasian, faced no consequences.

26. Two of the other staff, who were both African American women who were being harassed by the resident quit their jobs over the continuing harassment.

27. African American residents that behaved in the same way as the Caucasian resident were terminated from the program, but this Caucasian resident was allowed to stay.

28. This is also emblematic of Defendant's different treatment that Caucasian people versus African American people.

29. Plaintiff complained to his supervisor that he felt that African Americans were being treated differently than Caucasians.

30. Each time Plaintiff met with his supervisor, he updated his supervisor on the situation with the resident and the problems that were ongoing.

31. The harassment that Plaintiff received from the resident included cursing and verbal threats to get Plaintiff in trouble. This continued until Plaintiff's employment was terminated.

32. In December of 2023, the women's night program staff had an outside of work outing where they participated in candle making at a store specializing in candle making.

33. Plaintiff was the only male that attended the candle making outing.

34. During the candle making outing, the staff were having fun and socializing.

35. Plaintiff was written up by his supervisor for using the apron of one of the candle store employees to wipe hot wax from his hand. There was no inappropriate touching or connotation involved, and the candle store employee did not react with any negativity.

36. Following this incident at the candle making outing, Plaintiff was required to take sexual harassment courses.

37. Plaintiff felt singled out because he was the only male and because he had previously complained about discrimination.

38. On January 17, 2024, Plaintiff received a termination letter.

39. Plaintiff was purportedly terminated by Defendant for sleeping during his shift and for being disrespectful and aggressively yelling at clients.

40. Plaintiff told Defendant that he had documentation that staff were given permission to sleep during their shifts and that other staff had also slept during their shifts and that Plaintiff's supervisor had made misrepresentations about him and shown favoritism in the workplace and of the discrimination and hostile work environment.

41. On February 6, 2024, Defendant responded that Plaintiff could send documentation for review, however, Defendant would not reverse its decision to terminate Plaintiff.

### *Count I*
### *Discrimination on the Basis of Race in Violation of Title VII*

42. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

43. At all times relevant hereto, Plaintiff was performing his job duties in a manner consistent with Defendant's policies, procedures, and expectations.

44. Plaintiff, as an African American man, is in a class protected from discrimination under Title VII.

45. All aforementioned actions against Plaintiff, by order or under the authority of Defendant's employees and supervisors, herein mentioned, qualify as adverse employment actions taken in violation of Title VII.

46. The aforementioned adverse actions taken against Plaintiff were part of a pattern, practice, and policy of Defendant.

47. Plaintiff was treated differently than similarly situated Caucasian employees.

48. Defendant's conduct, by and through its employees and supervisors, was intentional, knowing, malicious, in willful and wanton disregard and reckless indifference to Plaintiff's rights in violation of Title VII.

49. As a direct result of Defendant's unlawful acts, as aforesaid, in violation of Title VII, Plaintiff has lost wages and benefits of employment and has suffered emotional distress.

50. Plaintiff's race was a motivating factor in Defendant's decision to take the aforementioned adverse employment actions.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against Defendant as follows:

A. Award Plaintiff actual damages including back-pay and compensatory damages for Defendant's violations of Title VII, including an amount equal to his lost wages and other benefits of employment, with interest, and any other expenses incurred as a result of her loss of these benefits;

B. Award Plaintiff damages for garden variety emotional distress;

C. Award Plaintiff punitive damages for Defendant's intentional and malicious violation of Plaintiff's rights;

D. Award Plaintiff reasonable attorney's fees and costs incurred herein; and

E. Grant Plaintiff such other and further legal relief as the Court deems just and proper under the facts and circumstances of this case.

***Count II***
***Discrimination on the Basis of Sex in Violation of Title VII***

51. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

52. At all times relevant hereto, Plaintiff was performing his job duties in a manner consistent with Defendant's policies, procedures, and expectations.

53. Plaintiff, as a male, is in a class protected from discrimination under Title VII.

54. All aforementioned actions against Plaintiff, by order or under the authority of Defendant's employees and supervisors, herein mentioned, qualify as adverse employment actions taken in violation of Title VII.

55. The aforementioned adverse actions taken against Plaintiff were part of a pattern, practice, and policy of Defendant.

56. Plaintiff was treated differently than similarly situated female employees.

57. Defendant's conduct, by and through its employees and supervisors, was intentional, knowing, malicious, in willful and wanton disregard and reckless indifference to Plaintiff's rights in violation of Title VII.

58. As a direct result of Defendant's unlawful acts, as aforesaid, in violation of Title VII, Plaintiff has lost wages and benefits of employment and has suffered emotional distress.

59. Plaintiff's sex was a motivating factor in Defendant's decision to take the aforementioned adverse employment actions.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against Defendant as follows:

A. Award Plaintiff actual damages including back-pay and compensatory damages for Defendant's violations of Title VII, including an amount equal to his lost wages and other benefits of employment, with interest, and any other expenses incurred as a result of her loss of these benefits;

B. Award Plaintiff damages for garden variety emotional distress;

C. Award Plaintiff punitive damages for Defendant's intentional and malicious violation of Plaintiff's rights;

D. Award Plaintiff reasonable attorney's fees and costs incurred herein; and

E. Grant Plaintiff such other and further legal relief as the Court deems just and proper under the facts and circumstances of this case.

***Count III***
***Retaliation for Reporting Acts of Discrimination in Violation of Title VII***

60. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

61. At all times relevant hereto, Plaintiff was performing hIS job duties in a matter consistent with Defendant's policies, procedures, and expectations.

62. All aforementioned actions against Plaintiff, by order or under the authority of Defendant's employees and supervisors, qualify as adverse employment actions taken in violation of Title VII.

63. The aforementioned adverse employment actions taken against Plaintiff were part of a pattern, practice, and policy of Defendant.

64. Defendant's alleged reasons given for the adverse employment actions taken against Plaintiff are pretextual, given the proximity of the of the adverse employment actions and Plaintiff's complaints regarding discrimination that he was being subjected to by Defendant's employees and supervisory employees.

65. Defendant's conduct, by and through its employees and supervisors, was intentional, knowing, malicious, in willful and wanton disregard and reckless indifference to Plaintiff's rights in violation of Title VII.

66. As a direct result of Defendant's unlawful acts, as aforesaid, in violation of Title VII, Plaintiff has lost wages and benefits of employment and has suffered emotional distress.

67. Plaintiff's complaints of discrimination were a motivating factor in Defendant's decision to take the aforementioned adverse employment actions.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor against Defendant as follows:

A. Award Plaintiff actual damages incluisding back-pay and compensatory damages for Defendant's violations of Title VII, including an amount equal to h lost wages and other benefits of employment, with interest, and any other expenses incurred as a result of her loss of these benefits;

B. Award Plaintiff damages for garden variety emotional distress;

C. Award Plaintiff punitive damages for Defendant's intentional and malicious violation of Plaintiff's rights;

D. Award Plaintiff reasonable attorney's fees and costs incurred herein; and

E. Grant Plaintiff such other and further legal relief as the Court deems just and proper under the facts and circumstances of this case.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

/s/ Nicole Harris
Nicole Harris #51080
NICOLE HARRIS, LLC
Attorney for Plaintiff
500 N. Skinker Blvd.
St. Louis, Missouri 63130
(314) 496-1872 (phone)
(314) 480-7230 (fax)
Email: nicole@nicoleharrislaw.com